**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

ALICE ANN GOFF and
ADAM K. SLONIKER                                               PLAINTIFFS

          v.          Civil No. 06-2023

SHERIFF CODY CARPENTER, individually
and in his official capacity;  CHIEF
DEPUTY BOBBY PAGE, individually and
in his official capacity;  DEPUTY
KEITH VANRAVENSWAY, individually and
in his official capacity; and COUNTY
OF SCOTT, ARKANSAS, d/b/a SCOTT
COUNTY SHERIFF'S OFFICE                                        DEFENDANTS

**O R D E R**

Now on this 4th day of May, 2007, comes on for consideration plaintiffs' **Motion For New Trial** (document #35), and from said motion, and the response thereto, the Court finds and orders as follows:

1. Plaintiffs' Complaint alleged that defendants searched their home without a warrant, using the agency of a jailed criminal suspect, in violation of the Fourth Amendment to the United States Constitution.  This claim was tried to a jury, and a verdict returned in favor of all defendants.

2. Plaintiffs now move for a new trial, pursuant to **F.R.C.P. 59,** contending that the Court erred in instructing the jury. Specifically, plaintiffs object that Instruction 10a "instructed the jury as to the evidence to be considered in deciding issues not properly before the jury in this case and thereby tends to

cause confusion as to what issues were before the jury and what evidence could be considered in determining those issues," and that instruction 10a was "inconsistent with the overall body of instructions and in particular with Instruction 10 to such an extent that it tends to cause confusion and renders the instructions as a whole misleading."

Defendants resist the motion and argue that the Court's instructions were not erroneous or confusing.

3.   **F.R.C.P. 59(a)** provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Plaintiffs rely on **Rini v. Oaklawn Jockey Club, 861 F.2d 502 (8th Cir. 1988),** which was "remanded for further proceedings" upon a finding that an instruction "confused the jury" and "placed added emphasis" on a factor that it was not proper for them to have considered.

The Court agrees with the general proposition that error in instructing the jury may justify a new trial if it has the potential of unfairly prejudicing a party.  Accordingly, the Court will now turn to an analysis of the specifics of this case.

4.   The Court believes the following evidence at trial was essentially undisputed:

\*   In November, 2005, the Scott County Sheriff's Office was investigating the theft of some weapons and, in furtherance of

-2-

that investigation, they questioned an individual in custody named Nathan Boursch.

* Boursch admitted breaking and entering several residences and stealing the missing weapons.

* Boursch told Scott County Sheriff Cody Carpenter that the weapons were located in a school bus owned by plaintiffs, Alice Ann Goff Sloniker and Adam Sloniker.

* Plaintiffs were in the process of converting the school bus into a residence; there was conflicting evidence on the degree to which this process was complete.

* The bus was located on property owned by Goff's parents, Charles and Alice Long, near Waldron in Scott County, Arkansas.

* Boursch told Carpenter he had spent the night in the bus several times and had left the stolen weapons there.

* At the direction of Sheriff Carpenter, Scott County Deputy Sheriffs Bobby Page and Keith Vanravensway took Boursch to the Long property.

* The plaintiffs were not present when Boursch and the deputies arrived.

* The deputies did not have a warrant to search the bus; nevertheless, they allowed Boursch to enter the bus to retrieve the stolen weapons. The weapons were not found in the bus.

* There was no evidence presented at trial of exigent circumstances that would have justified the deputies in conducting

a warrantless search of the bus, and the deputies admitted they could not have legally and properly entered the bus without a warrant.

    5.   The Instructions, as a whole, focused on the critical issue of whether an unreasonable search occurred.

Instruction 6 told the jury that the party who has the burden of proof had to establish it by a preponderance of the evidence.

Instruction 9 told the jury that "[o]ne of the rights of citizens secured by the United States Constitution is the Fourth Amendment right to be 'secure in their person, houses, papers, and effects against unreasonable searches'."

Instruction 10 told the jury that plaintiffs, in order to prevail on their claim against the individual defendants Carpenter, Page and Vanravensway[1], had the burden of proving:

* that a search of their home occurred;

* that the search was conducted by the defendants, or by a person acting as their agent; and

* that plaintiffs sustained damages.[2]

Instruction 10 also told the jury that it was not plaintiffs' burden to prove -- if a search occurred -- that it was unreasonable, because the search of a person's home without a

---

[1] As to the government defendant, there was the additional element that the search had to be conducted pursuant to an official policy or decision.

[2] The jury was instructed that if no actual damages were proven but a search occurred, they were to award nominal damages.

warrant is presumed to be unreasonable.

The instruction at the center of plaintiffs' contention that the instructions were prejudicially erroneous and misleading is Instruction 10a.  This instruction told the jury that the defendants, as police officers, were entitled to act on information they had received regarding alleged crimes in the community, and that any information not known by the defendants at the time of the alleged search in this case was irrelevant and should not be considered when deciding on the reasonableness of defendants' conduct.

The Verdict was explained to the jury in Instruction 18a.  In the Verdict, the first four Interrogatories inquired, sequentially as to each defendant, whether the jury found "from a preponderance of the evidence that [defendant] violated the Fourth Amendment right of Alice Ann Goff Sloniker and Adam K. Sloniker to be secure against unreasonable searches."

6.   Plaintiffs say that -- on the evidence before the jury and in light of Instruction 10 -- the issue was simply whether there was a **search**, not whether it was *reasonable* or *unreasonable*. They correctly note that, if defendants were contending they *did* conduct a search (they did not so contend) and that they had probable cause to do so (they did not so contend), then the reasonableness of their actions and/or their evaluation of the facts they were relying on for probable cause might have been

relevant and Instruction 10a would have been justified.  Absent such contentions and evidence to support them, plaintiffs say it was error for the Court to give Instruction 10a -- because it could tend to confuse the jury and cause them to think that if they found the actions of the defendants to be reasonable, then they could properly conclude that even if a search did occur, it was not an unreasonable search.

Given the pervasive focus on reasonableness in the Instructions, the Court agrees with plaintiffs that Instruction 10a had the potential to create confusion in the minds of the jurors.  The only liability issue in the Interrogatories on the Verdict was whether the defendants violated the right to be secure against "unreasonable searches."  Instruction 10 told the jury that plaintiffs had the burden of proving that a search of their home occurred, but also stated that it was not plaintiffs' burden to prove that any such search was unreasonable -- because the search of a person's home without a warrant is presumed to be unreasonable.  Thus, Instruction 10 incorporated a legal proposition based on what the evidence indisputably showed -- that there was no warrant associated with the events alleged by plaintiffs to have constituted a search of their home.

The immediately following Instruction 10a then told the jury that there were things they could not consider when deciding whether the defendants' conduct was reasonable.  This instruction

could reasonably have implied to the jury -- or permitted them to reasonably infer -- that in determining whether a search of plaintiffs' home had occurred, they should evaluate the reasonableness of defendants' actions at the time of the alleged search.  Such an implication and/or inference would be erroneous and could be unfairly prejudicial to plaintiffs.

    7.   The Court next considers whether the potential of Instruction 10a to create confusion went beyond a mere possibility and into the realm of probability.  A new trial is necessary only when errors in the instructions "misled the jury or had a probable effect on the jury's verdict."  **Slidell, Inc., v. Millennium Inorganic Chemicals, Inc.**, 460 F.3d 1047, 1054 (8th Cir. 2006).

    The Court first notes that it is possible the verdict was based on a finding that the bus was not the plaintiffs' home and, therefore, that there was no unreasonable search of a home.  That would appear to be unlikely since defendants were the proponents of evidence that Boursch had told them he spent the night there on several occasions and had left some of his personal effects there.

    It is also possible that the verdict was based on a finding that no search occurred at all, or that if there was a search, Boursch was not acting as an agent of the government (i.e., that Boursch only went into the bus to get his personal belongings, not stolen weapons).  Though theoretically possible, the Court does not think this to be probable since the evidence to the contrary

was strong:

* defendants admitted that they wanted to obtain the weapons;

* defendants acknowledged that they could not personally enter the bus without a search warrant; and

* defendants admitted that they took Boursch -- who was in jail -- to the bus for the purpose of having him retrieve the weapons.

Second, the Court recalls that defendants contended strenuously for Instruction 10a -- indicating that they thought it would have an effect on the jury's verdict. The Court also recalls that plaintiffs objected just as strenuously -- indicating that they, too, thought it could have an effect on the jury's verdict. The Court believes now that both were right in those beliefs.

Finally, whether a search occurred was the only liability issue presented to the jury -- making Instructions 10 and 10a critical to the correct disposition of the case, and any error in those instructions more likely to be harmful. As the Court stated in **Rahn v. Hawkins**, **464 F.3d 813 (8th Cir. 2006)**,

> [t]he sole issue at trial was whether the defendants' use of force was justified. A correct statement of the law as to what circumstances justified deadly force was therefore critical to a correct disposition of the case. Because the jury was instructed improperly as to deadly force, and because we cannot conclude that the error was harmless, we must reverse the judgment entered on the jury verdict . . . and remand for a new trial.

-8-

**464 F.3d at 818.**

The Court is not persuaded by defendants' arguments that the lack of questions from the jury during deliberations, the brief deliberations, and the unanimity of the verdict suggest a lack of confusion. Unanimity is, of course, a non-issue, as all verdicts in federal court are required to be unanimous. As to why there were no questions from the jury or why their deliberations may have been brief, the Court has no way of knowing and could only speculate. The question is not whether the jury was, in fact, confused by Instruction 10a; but, rather, whether its obvious potential for such confusion could amount to a probability that such occurred.

The Court is also not persuaded by defendants' contention that Instruction 10a may have been "an evidentiary one" -- whatever that may mean. The jury would have no way to place the instruction in such a perspective because it was not couched as a limiting instruction or otherwise so identified. In addition, the placement of Instruction 10a immediately after Instruction 10 has the potential -- and probability -- of suggesting to the jury that it was intended to either modify or supplement Instruction 10.

The Court also considers it of no moment that plaintiffs did not object to the Court's ruling, *in limine*, that it would conditionally admit certain evidence having to do with Boursch subject to a limiting instruction. Their acquiescence in the

ruling was not related to the text of any such instruction because defendants had not, at that point, offered Instruction 10a.

8.   "One purpose of jury instructions 'is to inform the jury of various permissible ways of resolving the issues in the case, and a party is entitled to an instruction on its theory of the case so long as it is legally correct and there is factual evidence to support it'."  Instructions must be "taken as a whole and viewed in the light of the evidence and applicable law." **Rahn**, *supra*, **464 F.3d at 818.**  When that standard is applied to the facts and circumstances of this case, the Court concludes that there was error in the instructions, and cannot conclude that such error was harmless.  A new trial is, therefore, appropriate, and plaintiffs' motion will be granted.

**IT IS THEREFORE ORDERED** that plaintiffs' **Motion For New Trial** (document #35) is **granted.**

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　  /s/ Jimm Larry Hendren  
　　　　　　　　　　　　　　　　**JIMM LARRY HENDREN**  
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**